UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GENERAL MILLS, INC.,

        Plaintiff,

    -v-                           3:16-CV-58

CHOBANI, LLC, a Delaware limited liability
company,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BLACKWELL, BURKE LAW FIRM<br>Attorneys for Plaintiff<br>431 South Seventh Street, Suite 2500<br>Minneapolis, MN 55415 | JERRY W. BLACKWELL, ESQ. |
| PERKINS, COIE LAW FIRM<br>Attorneys for Plaintiff<br>1201 Third Avenue, 48th Floor<br>Seattle, WA 98101 | CHARLES C. SIPOS, ESQ. |
| BOND, SCHOENECK LAW FIRM<br>Attorneys for Plaintiff<br>One Lincoln Center<br>Syracuse, NY 13202 | DAVID L. NOCILLY, ESQ.<br>JONATHAN B. FELLOWS, ESQ. |
| FOLEY, HOAG LAW FIRM<br>Attorneys for Defendant<br>155 Seaport Boulevard<br>Boston, MA 02210 | JULIA HUSTON, ESQ.<br>DAVID A. KLUFT, ESQ.<br>ANTHONY E. RUFO, ESQ. |
| HARRIS, BEACH LAW FIRM<br>Attorneys for Defendant<br>99 Garnsey Road<br>Pittsford, NY 13534 | DOUGLAS A. FOSS, ESQ.<br>SVETLANA K. IVY, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

**I. INTRODUCTION**

On January 29, 2016, a Memorandum–Decision & Order (the "January 29 MDO") issued granting a request by General Mills, Inc. ("General Mills") to preliminarily enjoin Chobani, LLC ("Chobani") from making certain advertising claims directed at the potassium sorbate used as a preservative in Yoplait yogurt. General Mills, Inc. v. Chobani, LLC, –F. Supp. 3d–, 2016 WL 369364 (N.D.N.Y. Jan. 29, 2016) (concluding, inter alia, that General Mills established a likelihood of success on the merits of its claim for false advertising under the Lanham Act). Chobani has since appealed from this order. See 28 U.S.C. § 1292(a)(1).

Chobani has also moved for partial reconsideration of the January 29 MDO. That motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

**II. DISCUSSION**[1]

Chobani's motion, brought pursuant to Federal Rule of Civil Procedure ("Rule") 59, seeks modification, elimination, or clarification of Part 2(d) of the preliminary injunction order memorialized in the January 29 MDO. According to Chobani, that portion of the order enjoins "a broad array of lawful speech and hypothetical future speech on which this Court has not heard evidence and as to which General Mills has presented no argument."

Rule 59(e), read in conjunction with Rule 54(a), provides for the alteration or amendment of a "judgment"; that is, "any order from which an appeal lies." FED. R. CIV. P. 54(a), 59(e); American ORT, Inc. v. ORT Israel, 2009 WL 233950, at *2 n. 2 (S.D.N.Y. Jan.

---

[1] The parties' familiarity with the factual background in this matter is presumed and will not be repeated here.

22, 2009) (concluding Rule 59(e) is proper procedural vehicle for seeking modification of preliminary injunction because it is an appealable interlocutory order).

Even in this context, a party seeking such relief "must show an intervening change in controlling law, the availability of previously unavailable evidence, or the need to correct a clear error of law or prevent manifest injustice[.]" Town of Halfmoon v. Gen. Elec. Co., 2015 WL 6872308, at *1 (N.D.N.Y. Nov. 9, 2015) (citation omitted); Country Club Assocs. v. Shaw's Supermkts., Inc., 643 F. Supp. 2d 243, 246 (D. Conn. 2009) (noting motions to alter or amend a judgment are subject to same standard as motion for reconsideration); see also PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, 2015 WL 58388, at *1 & n. 2 (N.D.N.Y. Jan. 5, 2015) (Sharpe, C.J.) (applying reconsideration standard to party's motion to amend preliminary injunction).

Here, Chobani contends reconsideration of Part 2(d) of the preliminary injunction order is warranted to correct a clear error of law or prevent manifest injustice. This portion of the order specifically prohibits Chobani from disseminating the following claims in its marketing and advertising as they relate to General Mills products:

    i.    General Mills products, including Yoplait Greek 100, are unsafe because they contain potassium sorbate;

    ii.    General Mills products, including Yoplait Greek 100, contain "stuff [ ] used to kill bugs'";

    iii.    Potassium sorbate is unsafe for consumers;

    iv.    General Mills products, including Yoplait Greek 100, are unsafe or harmful; and

    v.    Use of the term "no bad stuff" as it relates to General Mills products, including Yoplait Greek 100;

General Mills, Inc., 2016 WL 356039, at *12.

According to Chobani, these limitations place it at a competitive disadvantage because it completely precludes usage of the phrase "no bad stuff" in relation to General Mills products regardless of whether or not a safety message is at issue. Indeed, Chobani's memorandum goes on to point out instances where its competitors in the industry use "nearly identical puffery."

Generally speaking, an order granting injunctive relief must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). As the Second Circuit has explained, "[i]njunctive relief should be narrowly tailored to fit specific legal violations," Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 50 (2d Cir. 1996), and courts should therefore "mould each decree to the necessities of the particular case." Forschner Grp., Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 406 (2d Cir. 1997) (citations omitted).

First, insofar as Chobani appears to be attempting to re-litigate the permissibility of using the phrase "no bad stuff" as part of the preservative comparison advertisements discussed in detail in the January 29 MDO, that attempt is of course rejected as improperly made on reconsideration. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Second, each of the examples cited in Chobani's brief is actually irrelevant to the particular factual circumstances of this case, since none of these examples are of specific comparative advertisements made in the context of product safety. As the January 29 MDO explained, the phrase "no bad stuff," standing alone or at the very least in the absence of a specific comparison to the safety of a direct competitor's product, may very well amount to

- 4 -

non-actionable puffery. General Mills, Inc., 2016 WL 356039, at *8. But that was decidedly not the context in which the language was used in the advertisements at issue here.

As the January 29 MDO further explained, a statement about something being "bad" or "bad stuff" can take on a specific, non-puffing meaning when connected to an express or implied factual assertion about a specific competitor's product. General Mills, Inc., 2016 WL 356039, at *8. This is especially so where, as here, that kind of "negative phrasing" was employed "in connection with other statements and images that paint[ed] General Mills's products as a safety risk because they contain potassium sorbate." Id.

To the extent Chobani is seeking what amounts to an advisory opinion on the permissibility of some counterfactual usage scenario, that request must be declined. Indeed, as General Mills points out, Chobani has in fact continued to use the phrase "no bad stuff" as part of other advertising efforts that do not include product safety comparison claims directed at specific competitors. See Fellows Decl., Exs. A & B, ECF No. 73-1 (attaching instances of usage that post-date the preliminary injunction order memorialized in the January 29 MDO). Notably, this usage has not drawn any objection by General Mills. Nor should it.

Finally, and particularly in light of the distinction just reiterated above, Chobani's claim that Part 2(d) of the preliminary injunction order is overly broad is only persuasive if one reads that portion of the order in a complete vacuum. The twenty-five pages of discussion set forth in the January 29 MDO were not written gratuitously—Rule 65 explicitly requires that an order granting injunctive relief "state the reasons why it issued" as well as "describe in reasonable detail . . . the acts restrained." FED. R. CIV. P. 65(d)(1).

As relevant here, Parts 2(a)-(c) of the preliminary injunction order restrain Chobani from transmitting the "Commercial," the "Print Ad," and the "Digital Content," three terms that

reference specific advertisements described in the January 29 MDO. General Mills, Inc., 2016 WL 356039, at *2 (relating these terms to particular elements of Chobani's Simply 100 advertising campaign). The details of each of these advertisements were submitted as part of briefing on the underlying motion and, of course, form the basis for the underlying dispute between the parties.

Beyond identifying these three specific advertisements, Part 2(d)(i)-(v) clearly reflects the further goal of fashioning preliminary relief that adequately precludes Chobani from creating other advertisements that, while perhaps not falling neatly into the descriptions of the specific advertisements set forth in Parts 2(a)-(c), might nevertheless employ the same or a similar combination of words, images, and phrases in a slightly different manner in an effort to communicate the same impermissible message—that Yoplait products containing potassium sorbate are a safety risk. Chobani, LLC, 2016 WL 369364, at *8.

In other words, Part 2(d), properly considered in the context of "the reasons why it issued," explains "in reasonable detail" what is prohibited. More importantly, it also draws a reasonable boundary just beyond the three specific advertisements identified in Part 2(a)-(c) that is intended to prevent subversion of the January 29 MDO's preliminary injunction order. See Forschner Grp., Inc., 124 F.3d at 406 ("A district court has a wide range of discretion in framing an injunction it deems reasonable to prevent wrongful conduct."); cf. N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) (noting in Lanham Act trademark infringement case that "the Second Circuit has affirmed the application of the 'safe distance' rule in the preliminary injunction context").

To be sure, it is possible to hypothesize a usage of the phrase "no bad stuff" (1) in combination with other images or phrases that (2) relates to General Mills's products yet

(3) does not convey an express or implied safety message about potassium sorbate. Indeed, Chobani's memorandum attempts to do just that.[2] But Rule 65(d) "does not require the district court to 'predict exactly what [the enjoined party] will think of next' or to describe all possible, permissible future commercials that [the enjoined party] may produce involving [its competitor's products]." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 241 (2d Cir. 2001). Should any of Chobani's proffered hypotheticals come to pass, the preliminary injunction may be revised appropriately. N.Y.C. Triathlon, LLC, 704 F. Supp. 2d at 328 (noting district court retains "equitable discretion" to revise preliminary injunction order as necessary).

## III. CONCLUSION

The preliminary injunction order memorialized in the January 29 MDO restrains Chobani from disseminating advertisements that portray certain of General Mills's products as unsafe to consume. Chobani's assertion that Part 2(d) of this order is overly broad or impermissibly vague fails to warrant reconsideration. Accordingly, Chobani's motion will be denied.

Therefore, it is

ORDERED that

Chobani's motion for reconsideration is DENIED.

IT IS SO ORDERED.

---

[2] For example, Chobani's brief claims that Part 2(d) of the order would preclude Chobani, a yogurt company, from including the phrase "no bad stuff" as part of a hypothetical advertisement regarding a "safety issue" with some of General Mills's cereal brand offerings.

_____
United States District Judge

Dated: April 22, 2016
       Utica, New York.